## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEITH L. CLEGHORN,** | : | **Civil No. 1:15-CV-00914** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Kane)** |
| **v.** | : | |
| | : | **(Magistrate Judge Schwab)** |
| **CAROLYN W. COLVIN** | : | |
| **Acting Commissioner** | : | |
| **Of Social Security** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction.

Plaintiff Keith L. Cleghorn ("Mr. Cleghorn"), an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act.  Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

This matter has been referred to the undersigned United States Magistrate Judge to prepare a report and recommended disposition pursuant to the provisions of 28 U.S.C. §636(b) and Rule 72(b) of the Federal Rules of Civil Procedure.  For the reasons expressed herein, we find that the final decision of the Commissioner of Social Security is not supported by substantial evidence.  Accordingly, it is

recommended that the final decision of the Commissioner denying Mr. Cleghorn's claims be VACATED, and this case be REMANDED to the Commissioner for a new administrative hearing.

## II.   Statement of Facts and of the Case.

On June 7, 2012, Mr. Cleghorn protectively filed an application for Disability Insurance Benefits under Title II of the Social Security Act. Then, on September 24, 2012, he filed an application for Supplemental Security Income under Title XVI of the Social Security Act. In both applications, Mr. Cleghorn alleged that he became unable to work on April 4, 2012, due to the following conditions: foot problems, back injury, knee problems, and shoulder injury. *Admin. Tr. 225*. Mr. Cleghorn was forty-seven years old on his alleged onset date.

Mr. Cleghorn's past relevant work included positions as a mechanic and a caregiver. Mr. Cleghorn reported that he stopped working because of his conditions, which affect his ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs. *Admin. Tr. 219*. Mr. Cleghorn alleges that he can only lift about twenty pounds, can sit for up to forty-five minutes at one time, and is unable to walk more than one block at a time or stand for extended periods of time (i.e., greater than fifteen minutes). *Admin. Tr. 66, 219*. He testified that he has neuropathy in both knees and has problems with three discs in his back. *Admin.*

2

*Tr. 65-66.*   He admitted that he experiences extreme pain, and suffers from frequent falls secondary to his neuropathy.  *Id.*  Although Mr. Cleghorn has a valid driver's license, he does not drive because he is afraid that his foot or leg would go numb while operating a vehicle and pose a danger to himself and others.  *Admin. Tr. 68.*

Mr. Cleghorn did not allege any mental impairment in his initial application for benefits.   However, at his hearing Mr. Cleghorn reported that he had been diagnosed and treated for anxiety and depression.  *Admin. Tr. 75.*  The record also reflects that Mr. Cleghorn has been diagnosed with and is being treated for diabetes.

In response to an inquiry by the Social Security Administration, treating source Dr. John Manzella completed a medical source statement on September 19, 2012 ("September 2012 medical source statement").  *Admin. Tr. 356-62.*  In the September 2012 medical source statement, Dr. Manzella assessed that Mr. Cleghorn could: lift or carry up to ten pounds frequently and twenty pounds occasionally; stand and walk one hour or less per day; sit less than six hours per eight hour workday ("15″ – 30″ with frequent breaks"); engage in minimal pushing and pulling with upper and lower extremities; occasionally stoop, crouch, balance, and climb; and never bend or kneel.   Dr. Manzella also assessed that Mr.

Cleghorn's ability to reach, handle, finger, feel, see, hear, taste/smell, and remain continent were affected by his impairments, but did not comment on the nature or degree of limitation.

On October 5, 2012, Mr. Cleghorn's claims were denied at the initial level of administrative review.  Thereafter, he requested an administrative hearing.  Mr. Cleghorn also continued to develop evidence to support his claims in the interim period between the initial denial of his claims and his administrative hearing.

On December 19, 2012, Dr. Manzella completed a medical source statement in which he addressed Mr. Cleghorn's ability to engage in physical work-related activities ("December 2012 medical source statement").  *Admin. Tr. 373-75*.  Dr. Manzella assessed that Mr. Cleghorn could: sit for less than zero to two hours per eight-hour workday; stand or walk less than one hour per eight-hour workday (with normal breaks), only if permitted to alternate between sitting and standing every ten minutes and use a cane;  rarely lift or carry no more than ten pounds; rarely push or pull with his upper or lower extremities; rarely bend/stoop, balance, kneel, crouch, and climb stairs, ramps, ladders, ropes, or scaffolds; and never reach, handle, or finger.  Dr. Manzella also assessed that Mr. Cleghorn had a visual limitation, should avoid work conditions where he would be exposed to temperature extremes and humidity/wetness, and would often require unscheduled

4

breaks, walking breaks, reclining breaks, excessive restroom breaks, and leg elevation. He also assessed that Mr. Cleghorn would not be able to work.

A hearing was convened on October 22, 2012 before Administrative Law Judge ("ALJ") Gerard W. Langan in Wilkes-Barre, Pennsylvania. Mr. Cleghorn appeared and testified with the assistance of his attorney. Impartial vocational expert Patricia L. Chilleri ("VE Chilleri") also appeared and testified.

At the conclusion of the hearing, the record was kept open for additional evidence. On January 31, 2014, the ALJ denied Mr. Cleghorn's claims in a written decision.

Following the ALJ's adverse decision, Mr. Cleghorn requested further review of his claims by the Appeals Council of the Office of Disability Adjudication and Review. Together with his request, Mr. Cleghorn submitted additional evidence that was not before the ALJ when he issued his decision.[1] *Admin. Tr. 8-19, 445-598.* On March 11, 2015, the Appeals Council denied Mr. Cleghorn's request for review making the ALJ's January 2014 decision the final decision of the Commissioner subject to judicial review by this court.

---

[1] Mr. Cleghorn argues that remand is appropriate pursuant to sentence four of 42 U.S.C. § 405(g). As such we have limited our review of this case to the evidence that was before the ALJ when he issued his written decision denying Mr. Cleghorn's claims. *Matthews v. Apfel*, 239 F.3d 589, 592-94 (3d Cir. 2001)(explaining that evidence first introduced to the Appeals Council cannot be considered by the District Court in making its substantial evidence review).

On May 11, 2015, Mr. Cleghorn initiated this action by filing a complaint. *Doc. 1*. Mr. Cleghorn alleges that the findings of fact in the final decision denying his claims are not supported by substantial evidence and that the decision is contrary to the law and regulations. *Doc. 1 ¶¶ 13-14*. As relief, Mr. Cleghorn requests that this Court modify the Commissioner's final decision and grant him benefits during the period of disability. *Doc. 1*. On July 29, 2015, the Commissioner filed her answer to Mr. Cleghorn's complaint. Together with her answer, the Commissioner provided a certified transcript of the entire record of administrative proceedings relating to this case. *Doc. 6 et. seq.* This matter has been fully briefed by the parties and is now ripe for resolution. *Doc. 7; Doc. 8*.

## III.   Legal Standards.

### A.   Substantial Evidence Review – the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F.Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003).  The question before this Court, therefore, is not whether Mr. Cleghorn is disabled, but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.  *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); *Burton v. Schweiker*, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's

determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); *Ficca*, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

### B.   Initial Burdens of Proof, Persuasion and Articulation for the ALJ.

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).   To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.   42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.  42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents

9

him or her in engaging in any of his or her past relevant work.   42 U.S.C.

§423(d)(5); 42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by

reference); 20 C.F.R. §§404.1512, 416.912; *Mason*, 994 F.2d at 1064.

Once this burden has been met by the claimant, it shifts to the Commissioner

at step five to show that jobs exist in significant number in the national economy

that the claimant could perform that are consistent with the claimant's age,

education, work experience and RFC.   20 C.F.R. §§404.1512(f), 416.912(f);

*Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive

requisites. Most significant among these legal benchmarks is a requirement that the

ALJ adequately explain the legal and factual basis for this disability determination.

Thus, in order to facilitate review of the decision under the substantial evidence

standard, the ALJ's decision must be accompanied by "a clear and satisfactory

explication of the basis on which it rests."   *Cotter v. Harris*, 642 F.2d 700, 704 (3d

Cir. 1981).   Conflicts in the evidence must be resolved and the ALJ must indicate

which evidence was accepted, which evidence was rejected, and the reasons for

rejecting certain evidence.   *Id.* at 706-707.   In addition, "[t]he ALJ must indicate in

his decision which evidence he has rejected and which he is relying on as the basis

for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

## IV.   Discussion.

### A.   The ALJ's Decision Denying Mr. Cleghorn's claims.

In his January 2014 decision denying Mr. Cleghorn's claims, the ALJ found that Mr. Cleghorn meets the insured status requirements of Title II of the Social Security Act through December 31, 2016.  The ALJ then assessed Mr. Cleghorn's claims at each step of the five-step sequential evaluation process before concluding that Mr. Cleghorn did not meet the statutory definition of disability under the Social Security Act at any point between April 4, 2012, and January 31, 2014.

At step one of the sequential evaluation process the ALJ found that Mr. Cleghorn did not engage in substantial gainful activity between April 4, 2012, and January 31, 2014.  *Admin. Tr. 37.*  At step two of the sequential evaluation process the ALJ found that Mr. Cleghorn had the following medically determinable severe impairments: degenerative joint disease of the left knee, lumbar radiculopathy, diabetes, obesity (body mass index greater than 30), anxiety, and depressive disorder.  *Id.*  At step three of the sequential evaluation process the ALJ found that Mr. Cleghorn did not have an impairment, or combination of impairments, that met

or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part

404, Subpart P, Appendix 1 ("Listing of Impairments"). *Admin. Tr. 38*.

Between steps three and four of the sequential evaluation process, the ALJ

assessed Mr. Cleghorn's RFC based on the all the evidence that was before him.

The ALJ assessed that, during the relevant period, Mr. Cleghorn had:

> The residual functional capacity to perform a narrow range of light
> work (treated as sedentary work); namely, lifting and carrying 20
> pounds occasionally and 10 pounds frequently with a sit/stand option
> every 60 minutes.  The claimant must avoid concentrated exposure to
> unprotected heights and moving machinery.  Claimant must avoid
> climbing ropes, ladders, and scaffolds.  The claimant could
> occasionally climb ramps and stairs.  He must avoid concentrated
> exposure to extreme cold temperatures, wetness and vibration.  The
> claimant could occasionally bend at the waist.  Claimant could
> occasionally use bilateral hands for fine manipulation.  He would have
> no limitations on gross handling.  The claimant must be afforded the
> option to sit/stand every 60 minutes.  The claimant would be able to
> perform simple routine tasks involving no more than short instructions
> and simple work related decisions with few work place changes.

*Admin. Tr. 40-41.*[2]

---

[2] The Commissioner's Medical-Vocational Guidelines provide that "[t]he functional capacity to perform a full range of light work includes the functional capacity to perform sedentary as well as light work." 20 C.F.R. Part 404, Subpart P, Appendix 2 §202.00(a).  In his hypothetical question, the ALJ limited Mr. Cleghorn to a significantly reduced RFC that the ALJ classified as "light" work as defined by 20 C.F.R. § 404.1567(b), 416.967(b).  The VE testified that, despite the ALJ's classification of Mr. Cleghorn's ability to engage in a significantly reduced range of light work, Mr. Cleghorn's additional limitations would eliminate all occupations at the "light" level, but would not preclude occupations at the "sedentary" level. *Admin. Tr. 84*.

The ALJ's findings at steps four and five of the sequential evaluation process were informed by VE Chilleri's testimony. VE Chilleri testified that an individual with the RFC above could not engage in Mr. Cleghorn's past relevant work as a home health care worker or machine mechanic. *Admin. Tr. 82*. Accordingly, the ALJ found at step four that Mr. Cleghorn could not engage in any of his past relevant work. *Admin. Tr. 47*. VE Chilleri also testified, however, that an individual of the same age, education, and work experience as Mr. Cleghorn, and with the RFC above, could engage in work as a video systems monitor (DOT #379.367-010), sorter (DOT #712.687-018), and order clerk (DOT #209.567-014). *Admin. Tr. 85*. VE Chilleri also provided statistical data on the number of positions that would be available for each position. Relying on this testimony, the ALJ concluded that, during the relevant period, Mr. Cleghorn could adjust to other work that existed in the national economy in significant numbers.

### B.    The ALJ's RFC Assessment is Not Supported by Substantial Evidence.

As discussed above, Mr. Cleghorn's treating source, Dr. Manzella, submitted two medical source statements in connection with Mr. Cleghorn's applications for benefits. The first was in September 2012, and the second was in December 2012. The parties do not appear to dispute that, if credited, either one of these medical source statements suggest than Mr. Cleghorn is more limited than

13

the ALJ found in his RFC assessment.[3]  In his decision, the ALJ accorded "some" weight to Dr. Manzella's September 2012 medical source statement and "no" weight to Dr. Manzella's December 2012 medical source statement.  *Admin. Tr. 44*.

Mr. Cleghorn argues that the ALJ erred by according only "some" weight to Dr. Manzella's September 2012 medical source statement, and by according "no" weight to Dr. Manzella's December 2012 medical source statement.  He argues that Dr. Manzella's assessment that Mr. Cleghorn is limited to one hour of standing or less per eight-hour workday is supported by a February 2012 MRI of his left knee, treatment notes documenting left knee effusion, tenderness, crepitus, and an antalgic gait.

---

[3] Mr. Cleghorn places great significance on the fact that the ALJ did not limit the amount of time per day that Mr. Cleghorn could stand.  Light work typically involves standing approximately six hours per eight-hour workday, whereas sedentary work typically involves standing no more than two hours per eight-hour workday.  SSR 83-10, 1983 WL 31251 at *5.  In both of his medical source statements Dr. Manzella assessed that Mr. Cleghorn could not be expected to stand or walk for more than one hour per eight-hour workday.  The ALJ's RFC assessment can fairly be construed as an assessment that Mr. Cleghorn could stand for up to six hours per eight-hour day, but because all "light" duty occupations were eliminated VE Chilleri identified occupations that were "sedentary" without addressing whether a limitation to one hour (as opposed to two hours) of standing with a sit/stand option would further erode the sedentary occupational base.  As such we find that the ALJ's error could not be construed as harmless, in that the VE testimony would not constitute substantial evidence if either of Dr. Manzella's medical source statements were credited.

In response the Commissioner argues that there is no basis to disturb the ALJ's assessment that Dr. Manzella's September 2012 and December 2012 medical source statements were not entitled to greater weight. *Doc. 8 at 19.* She argues that the responsibility for assessing RFC belongs to the ALJ, and that the ALJ is not required to seek outside "expert assistance" from a medical expert to support every finding of fact incorporated into the decision. *Doc. 8 at 22-23* (*citing Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011); *Titterington v. Barnhart*, 174 F.App'x 6, 11 (3d Cir. 2006)). We agree with the Commissioner that the responsibility for assessing residual functional capacity at the administrative law judge hearing level belongs to the ALJ. *See* 20 C.F.R. §§ 404.1546(c), 416946(c). However, this Court has previously recognized that the language from *Chandler* cited by the Commissioner is dicta, and that it must be disregarded in light of the Third Circuit's prior ruling in *Doak v. Heckler*, where it was held that an ALJ's RFC assessment that a claimant could engage in light work was not supported by substantial evidence because the only three physicians that provided opinions assessed that the claimant's RFC was more limited than found by the ALJ. 790 F.2d 26, 29 (3d Cir. 1986). In *Gunder v. Astrue*, the Court explained that:

> Any argument from the Commissioner that his administrative law judges can set the residual functional capacity in the absence of a

medical opinion of evidence must be rejected in light of *Doak*. Furthermore, any statement in *Chandler* which conflicts (or arguably conflicts) with *Doak* is *dicta* and must be disregarded. *Government of Virgin Islands v. Mills*, 634 F.3d 746, 750 (3d Cir. 2011)(a three member panel of the Court of Appeals cannot set aside or overrule a precedential opinion of a prior three member panel).

*Gunder v. Astrue*, 2012 WL 511936 (M.D.Pa. Feb 15, 2012)(Conaboy, J.). Furthermore, although the Commissioner is correct that the Social Security regulations do not require an ALJ to seek outside medical expert review of every finding of fact, an ALJ's RFC assessment must be supported by substantial evidence. Here, because we find that the ALJ's findings of fact with respect to certain aspects of Mr. Cleghorn's RFC (i.e., his ability to stand) are not supported by substantial evidence, we are compelled to remand this case for further review.

In this case, the ALJ relied entirely on Mr. Cleghorn's medical treatment records to conclude that Mr. Cleghorn could stand for up to six hours per eight-hour workday. *See* SSR 83-10, 1983 WL 31251 at *5 (explaining that "light" work requires standing or walking for approximately six hours per eight-hour day). These records contain little evidence on the subject of Mr. Cleghorn's functional abilities in general or his ability to stand and walk in particular, thus we must conclude that the ALJ's RFC assessment is based almost entirely on his own interpretation of the raw objective findings of various physicians, rather than on an expert opinion that interprets these data. The Third Circuit has repeatedly held that

16

an ALJ may not reject or discount an uncontradicted treating source opinion based on his own lay interpretation of objective medical evidence. *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir. 1985)("By independently reviewing and interpreting laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician . . . ."); *Kent v. Schweiker,* 710 F.2d 110, 115 (3d Cir. 1983)("we have pointed out time and again that these kinds of judgments are not within the ambit of the ALJ's expertise."); *Van Horn v. Schweiker,* 717 F.2d 871, 874 (3d Cir. 1983)(remanding where an ALJ relied on his own observations to discount a consultative examiner's opinion about the claimant's mental state); *Gober v. Matthews*, 574 F.2d 773, 777 (3d Cir. 1978)("While an administrative law judge is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician . . . .").

Although we ultimately find that remand is necessary because the ALJ's RFC assessment is not supported by substantial evidence, nothing in our decision is meant to suggest what the result should be on remand.  We simply find that substantial evidence does not support the ALJ's RFC assessment because the only medical opinion of record suggests a greater degree of functional limitation than found by the ALJ, and that the objective medical records and clinical observations

17

in Mr. Cleghorn's treatment records are not sufficient to support the ALJ's conclusion in this case because none contain any statement about Mr. Cleghorn's ability to engage in basic work activities despite his impairments.   Further, although we find that the ALJ did not cite to substantial evidence in support of his decision to discount Dr. Manzella's medical source statements in his decision, we make no finding as to whether such evidence as would support this conclusion could be found in the existing record or could be developed on remand.   On remand, the ALJ should be free to further develop the record as he deems necessary.

Although Mr. Cleghorn has made other allegations of error in his brief, we find that we need not directly address these arguments because we have found a basis for remand.   To the extent that any error was made in considering Mr. Cleghorn's obesity or assessing the credibility of his testimony these concerns may be remedied on remand.

## V.     Recommendation.

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that, Mr. Cleghorn's request for relief be GRANTED and the Commissioner's final decision denying  Mr. Cleghorn's claims be VACATED  as follows:

1.     Final judgment should be entered in favor of Mr. Cleghorn and against the Commissioner of Social Security;

2.    This case should be remanded to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure  to  file  timely  Objections  to  the  foregoing  Report  and

Recommendation may constitute a waiver of any appellate rights.

Submitted September 9, 2016

_**S/Susan E.  Schwab**_
Susan E. Schwab
United States Magistrate Judge

19